Todd L. Bice, Esq., Bar No. 4534
TLB@pisanellibice.com
Emily A. Buchwald, Esq., Bar No. 13442
EAB@pisanellibice.com
Daniel R. Brady, Esq. Bar No. 15508
DRB@pisanellibice.com
PISANELLI BICE PLLC
400 South 7th Street, Suite 300
Las Vegas, Nevada 89101
Telephone: (702) 214-2100
Facsimile: (702) 214-2101

Robert S. Loigman (admitted *pro hac vice*)
Ryan A. Rakower (admitted *pro hac vice*)
Caitlin E. Jokubaitis (admitted *pro hac vice*)
robertloigman@quinnemanuel.com
ryanrakower@quinnemanuel.com
caitlinjokubaitis@quinnemanuel.com
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Ave., 22nd Floor
New York, New York 10010
Telephone:  (212) 849-7000

*Attorneys for Defendants Aspire Global International Limited,*
*AG Communications Limited, Aspire Global 7 Limited,*
*and Aspire Global Limited*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| EBET, INC., | CASE NO.:    2:23-CV-01830-GMN-DJA |
| Plaintiff, | **DEFENDANTS' MOTION TO DISMISS THE ACTION AND COMPEL INTERNATIONAL ARBITRATION UNDER 9 U.S.C.§§ 3 AND 206, OR, IN THE ALTERNATIVE, TO DISMISS UNDER FED. R. CIV. P. 12(B)(2) FOR LACK OF PERSONAL JURISDICTION, OR, IN THE ALTERNATIVE, TO DISMISS IN PART UNDER FED. R. CIV. P. 12(b)(6)** |
| v. | |
| ASPIRE GLOBAL INTERNATIONAL LIMITED; AG COMMUNICATIONS LIMITED; ASPIRE GLOBAL 7 LIMITED; ASPIRE GLOBAL PLC, | |
| Defendants. | **ORAL ARGUMENT REQUESTED** |

*(left margin vertical text)* PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

i

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................................. 1

BACKGROUND .................................................................................................................. 2

    A.    The Parties ............................................................................................................ 2

    B.    The Transaction .................................................................................................... 3

        1.    The Share Purchase Agreement ............................................................... 3

        2.    The Operator Services Agreements ......................................................... 4

        3.    The Transitional Services Agreement ...................................................... 4

        4.    The Promissory Note ................................................................................ 4

    C.    EBET Files In Nevada State Court And Omits Reference To The SPA's
        Arbitration Clause ................................................................................................ 5

    D.    Aspire Removes This Action ................................................................................ 5

ARGUMENT ....................................................................................................................... 5

I.    EBET'S CLAIMS ARE SUBJECT TO MANDATORY ARBITRATION IN MALTA .... 6

    A.    The SPA Is Governed By The New York Convention .......................................... 6

        1.    The SPA Contains A Valid Agreement To Arbitrate ............................... 8

        2.    The SPA's Arbitration Provision Encompasses All Of EBET's Claims ....... 8

    B.    In The Alternative, The Court Should Stay The Case And Order EBET To Submit
        Its Claims To Arbitration ................................................................................... 11

II.    THE COURT LACKS PERSONAL JURISDICTION OVER ASPIRE ......................... 11

    A.    Aspire Is Not Subject To General Jurisdiction In Nevada ................................. 12

    B.    There Is No Basis To Exercise Specific Jurisdiction Over Aspire ..................... 12

        1.    Aspire Did Not Purposefully Direct Its Activities Toward Nevada Or Avail
        Itself Of The Privileges Of Doing Business In Nevada ......................... 13

        2.    EBET's Claims Do Not Arise Out Of Or Relate To Aspire's Activities In
        Nevada ................................................................................................... 14

        3.    Exercising Personal Jurisdiction Over Aspire Is Not Reasonable .......... 14

III.    COUNT I FAILS TO PLEAD FRAUD WITH PARTICULARITY ............................. 16

CONCLUSION .................................................................................................................. 17

Pisanelli Bice
400 South 7th Street, Suite 300
Las Vegas, Nevada 89101

## __TABLE OF AUTHORITIES__

__Page(s)__

## __Cases__

*Arbella Mut. Ins. Co. v. Eighth Jud. Dist. Ct. ex rel. Cnty. of Clark*,
   134 P.3d 710 (Nev. 2006) ................................................................................................12

*AT&T Techs., Inc. v. Commc'ns Workers of Am.*,
   475 U.S. 643 (1986) ..........................................................................................................7

*Bly-Magee v. California*,
   236 F.3d 1014 (9th Cir. 2001) .........................................................................................17

*Buckeye Check Cashing, Inc. v. Cardegna*,
   546 U.S. 440 (2006) ..........................................................................................................9

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985) ........................................................................................................13

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.*,
   207 F.3d 1126 (9th Cir. 2000) ...........................................................................................8

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014) ........................................................................................................12

*Dean Witter Reynolds Inc. v. Byrd*,
   470 U.S. 213 (1985) ..........................................................................................................7

*Dreiling v. Am. Exp. Co.*,
   458 F.3d 942 (9th Cir. 2006) .............................................................................................9

*Elko Broadband Ltd. v. Dhabi Holdings PJSC*,
   2020 WL 6435754 (D. Nev. Nov. 2, 2020) .....................................................................8, 9

*FDIC v. Brit.-Am. Ins. Co.*,
   828 F.2d 1439 (9th Cir. 1987) .........................................................................................15

*Gage v. Cox Commc'ns, Inc.*,
   2017 WL 1536219 (D. Nev. Apr. 27, 2017) ....................................................................16

*Gates Learjet Corp. v. Jensen*,
   743 F.2d 1325 (9th Cir. 1984) .........................................................................................15

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
   564 U.S. 915 (2011) ........................................................................................................12

*Holland Am. Line Inc. v. Wartsila N. Am., Inc.*,
   485 F.3d 450 (9th Cir. 2007) ...........................................................................................14

*Homestead Lead Co. v. Doe Run Res. Corp.*,
   282 F. Supp. 2d 1131 (N.D. Cal. 2003) .............................................................................8

*Human v. Czech Rep.-Ministry of Health*,
   824 F.3d 131 (D.C. Cir. 2016) ...........................................................................................7

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

*Martinez v. Aero Caribbean*,
    764 F.3d 1062 (9th Cir. 2014) ..................................................................12, 13

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
    473 U.S. 614 (1985) ................................................................................7, 9

*MMAWC, LLC v. Zion Wood Obi Wan Tr.*,
    448 P.3d 568 (Nev. 2019) ...........................................................................10

*Morris DeLee Fam. Tr. v. Cost Reduction Eng'g, Inc.*,
    705 P.2d 161 (Nev. 1985) ...........................................................................10

*Prima Paint Corp. v. Flood & Conklin Mfg. Co.*,
    388 U.S. 395 (1967) ....................................................................................9

*Ranza v. Nike, Inc.*,
    793 F.3d 1059 (9th Cir. 2015) ..................................................................12, 14

*Righthaven, LLC v. Virginia Citizens Def. League, Inc.*,
    2011 WL 2550627 (D. Nev. June 23, 2011) ...................................................12

*Scherk v. Alberto-Culver Co.*,
    417 U.S. 506 (1974) ................................................................................7, 15

*Schwarzenegger v. Fred Martin Motor Co.*,
    374 F.3d 797 (9th Cir. 2004) ..................................................................12, 14

*Simula, Inc. v. Autoliv, Inc.*,
    175 F.3d 716 (9th Cir. 1999) ..................................................................8, 9

*Sparling v. Hoffman Const. Co.*,
    864 F.2d 635 (9th Cir. 1988) ..................................................................6, 9

*Thinket Ink Info. Res., Inc. v. Sun Microsys., Inc.*,
    368 F.3d 1053 (9th Cir. 2004) .......................................................................6

*United States v. Ritchie*,
    342 F.3d 903 (9th Cir. 2003) .........................................................................4

*Walden v. Fiore*,
    571 U.S. 277 (2014) ....................................................................................13

*Westfall v. USAA Sav. Bank*,
    2020 WL 5097510 (D. Nev. Aug. 27, 2020) .....................................................6

*Wynn Resorts v. Atl.-Pac. Cap., Inc.*,
    497 F. App'x 740 (9th Cir. 2012) ...................................................................7

*Yamashita v. LG Chem, Ltd.*,
    62 F.4th 496 (9th Cir. 2023) .........................................................................14

## Statutes & Rules

9 U.S.C. § 2 ..............................................................................................8

9 U.S.C. § 3 ....................................................................................1, 6, 11

9 U.S.C. § 202 ...........................................................................................................7

9 U.S.C. § 205 ...........................................................................................................5

9 U.S.C. § 206 ...............................................................................................1, 7, 11

28 U.S.C. § 1331 .......................................................................................................5

28 U.S.C. § 1332 .......................................................................................................5

Fed. R. Civ. P. 9(b) .................................................................................................16

Fed. R. Civ. P. 12(b)(2) ......................................................................................1, 12

Fed. R. Civ. P. 12(b)(6) ........................................................................................1, 6

Nev. Rev. Stat. § 14.065 .........................................................................................12

Nev. R. Civ. P. 9(b) .................................................................................................16

## **Other Authorities**

Convention on the Recognition and Enforcement of Foreign Arbitral Awards .....................5, 6

Restatement (Third) of U.S. Law of Int'l Comm. Arbitration (Am. L. Inst. 2012)....................7

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

v

1  Defendants Aspire Global International Limited, AG Communications Limited, Aspire Global
2  7 Limited, and Aspire Global Limited, sued herein as Aspire Global PLC, (collectively, "Aspire"),
3  move to dismiss Plaintiff EBET, Inc.'s ("EBET") complaint in its entirety in favor of international
4  arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 3 and 206, or, in the alternative, to
5  dismiss the complaint in its entirety under Rule 12(b)(2) of the Federal Rules of Civil Procedure
6  for lack of personal jurisdiction, or, further in the alternative, to dismiss EBET's claim for fraud in
7  the inducement under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a
8  claim.

9  ## INTRODUCTION

10  In October 2021, EBET, Inc. (f/k/a Esports Technologies, Inc.), an online gambling
11  company, purchased certain "business-to-consumer" ("B2C") assets from Aspire, a Malta-based
12  owner and operator of several iGaming platforms. Now, two years after the close of the transaction,
13  EBET has decided that it made a bad bet and wants out. EBET's complaint is fatally deficient for
14  several independent reasons.

15  First, EBET is asserting its claims in the wrong forum, in violation of EBET's binding
16  agreement to bring any claims related to the acquisition in arbitration abroad. The parties' share
17  purchase agreement memorializing EBET's purchase of Aspire's B2C assets (the "SPA") requires
18  that all claims "arising out of or in connection with" that agreement be "decided exclusively by
19  arbitration in Malta." Declaration of Todd Bice ("Bice Decl.") Ex. A (SPA) § 13.2. Each of the
20  four counts of the complaint squarely relates to the transaction and the SPA. EBET claims that
21  Aspire fraudulently induced it to enter into the SPA (Count I), that Aspire breached that same
22  agreement and an implied covenant of good faith and fair dealing inherent in it (Counts III-IV), and
23  that accordingly, the entire transaction should be rescinded (Count II). Reflecting federal policy
24  strongly favoring enforcement of commercial arbitration agreements in international contracts, the
25  Federal Arbitration Act and the Convention on the Recognition and Enforcement of Foreign
26  Arbitral Awards mandates that courts give effect to such agreements. As such, EBET is bound to
27  arbitrate its claims. This action does not belong in litigation in Nevada, but in arbitration in Malta.
28  On this basis, alone, the complaint should be dismissed in its entirety.

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

Second, this Court lacks jurisdiction over Defendants, each of which is a Malta-based entity with no ties to Nevada.  There can be no serious dispute that Aspire is not "at home" in Nevada, and EBET fails to plead any contacts between Aspire and the forum that relate to the complaint's causes of action.

For each of the above reasons, the Court should dismiss this action with prejudice. Moreover, even if the Court were to consider the merits of the individual claims in the complaint—which, given the fatal deficiencies raised above, it need not do—it should dismiss EBET's claim for fraud in the inducement for failure to state a claim as EBET's allegations fall far short of the mandated pleading standard for fraud claims.  EBET's vague assertions regarding purportedly misleading statements—which fail to allege who made the statements, when they were made, and what was assertedly relayed—make it impossible for Aspire to identify and address head on the allegations of fraud.

## **BACKGROUND**[1]

### A.     The Parties

Plaintiff EBET, Inc. (f/k/a Esports Technologies, Inc.) is a Nevada-based corporation that operates in the online gambling industry.  ECF No. 1, Ex. C ("Compl.") ¶ 2.

Defendants Aspire Global International Limited, AG Communications Limited, Aspire Global 7 Limited, and Aspire Global Limited, sued herein as Aspire Global PLC, (collectively, "Aspire"), are companies incorporated under the laws of Malta with their principal places of business in Malta. *id.* ¶¶ 3-6; Declaration of Tsachi Maimon ("Maimon Decl.") ¶ 5.  Aspire provides services for the online gaming—"iGaming"—market.  Compl. ¶ 9.  Aspire does not have an office in Nevada or the United States, and is not registered to do business in Nevada or any other U.S. state.  Maimon Decl. ¶¶ 6, 9.

In addition to Aspire, the complaint names DOES I through X and ROE CORPORATIONS I through X as individuals and corporations, respectively, with "sufficient minimum contacts to Clark County, Nevada."  Compl. ¶¶ 7-8.  EBET alleges that the Doe defendants are "individuals

---

[1]     Aspire treats all well-pleaded facts in the complaint as true solely for purposes of this motion.

residing in Clark County, Nevada," *id.* ¶ 7, and that the Roe defendants did "business in Clark County, Nevada," *id.* ¶ 8. But EBET alleges nothing further as to the nature and identities of the Doe or Roe defendants, their relationship to EBET and Aspire or to the forum, or any conduct relevant to this action.

## B. The Transaction

On or around May 27, 2021, Aspire and EBET signed a letter of intent and term sheet for EBET to purchase certain B2C assets from Aspire, including websites, domains, intellectual property, and player databases for use in iGaming. Compl. ¶ 9. At no point during the parties' negotiations did representatives of Aspire meet with EBET in Nevada. Maimon Decl. ¶¶ 10, 11. None of the negotiations, meetings, or conferences in connection the transaction took place in the United States. *Id.* ¶ 11.

### 1. The Share Purchase Agreement

On October 1, 2021, the parties entered into the SPA, pursuant to which Aspire agreed to transfer its B2C assets into a special purpose entity, Karamba Limited, and EBET agreed to purchase all shares of Karamba from Aspire for 65 million euro. Compl. ¶¶ 9, 13; SPA § 3.1. The purchase price consisted of fifty million euro in cash, a ten million euro promissory note ("Promissory Note"), and five million euro worth of newly issued common stock in EBET. Compl. ¶ 13; SPA § 3.1.

Section 13.2 of the SPA contains a broad dispute resolution clause that provides for arbitration of all disputes arising out of or in connection with the SPA. Specifically,

> In the event of ***any dispute, controversy or claim arising out of or in connection with this Agreement, or the breach, termination, interpretation, or validity thereof***, the parties to this Agreement shall make every reasonable effort to resolve the dispute through good faith negotiation, and if the dispute cannot be resolved through good faith negotiation ***it shall be decided exclusively by arbitration in Malta*** in accordance with Part V (International Arbitration) of the Malta Arbitration Act and the Arbitration Rules of the Malta Arbitration Centre as at present in force.

SPA § 13.2 (emphasis added).[2] The parties jointly designated arbitration to proceed exclusively in Malta, where Aspire is based, pursuant to the procedures specified in the Malta Arbitration Act. *Id.*

---

[2] The Share Purchase Agreement, the Promissory Note, the Operator Services Agreements, and the Transitional Services Agreement can be considered for purposes of this motion because,

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

2.      *The Operator Services Agreements*

The parties closed the transaction on November 29, 2021.  Compl. ¶ 13.  In connection with the closing, Aspire transferred various services and licenses to Karamba so that EBET, as the sole owner of Karamba (upon completion of the transaction), could operate the iGaming platform in certain markets, including those regulated by the Great Britain Gambling Commission and the Danish Gambling Authority ("Regulated Markets Operator Services Agreement") and the Maltese Gaming Authority ("Unregulated Markets Operator Services Agreement").  *Id.* ¶ 16.  Each of the operator services agreements is governed by Maltese law and subject to the exclusive jurisdiction of the Maltese Courts.  Bice Decl. Ex. B (Unregulated Markets Operator Services Agreement) § 16.12; Bice Decl. Ex. C (Regulated Markets Operator Services Agreement) § 16.12.

3.      *The Transitional Services Agreement*

Aspire Global Limited, Karamba, and Esports Product Trading Malta Ltd., a Malta-based wholly-owned subsidiary of EBET, also entered into a Transitional Services Agreement ("TSA") at the closing.  Compl. ¶ 17.  As set forth in the recitals to the TSA, the "parties have a mutual interest in ensuring that certain transitions and integrations *in connection with the SPA* occur without incident and without business continuity disruption to the extent possible."  Bice Decl. Ex. D (TSA) at 1 (emphasis added).  Aspire agreed to supply certain transitional services and support to Karamba following the close of the transaction.  *Id.* at 5.  The TSA is exclusively governed by the laws of Malta, and "any dispute arising between the parties from any matter related or otherwise connected to this agreement shall be subject to the exclusive jurisdiction of the Courts of Malta."  *Id.* § 8(a).

4.      *The Promissory Note*

As provided for in section 3.1(b) of the SPA and to give effect to the terms set forth in Schedule 3.1(i) of the SPA, EBET executed a Promissory Note with Aspire Global Limited pursuant to which EBET borrowed ten million euro to finance a portion of the purchase price.  SPA

---

although EBET did not attach copies of these documents to its complaint, EBET "refers extensively to the document[s]" and these agreements "form[] the basis" of EBET's claims.  *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

§ 3.1(b) & Schedule 3.1(i).  The Promissory Note contains a limited forum selection clause, under which only the "***borrower*** [EBET] hereby submits to the exclusive jurisdiction of the United States Federal and State Courts located in Clark County, Nevada with respect to any dispute arising under this Note, the agreements entered into in connection herewith or the transactions contemplated hereby or thereby."  Bice Decl. Ex. E (Promissory Note) § 4.6 (emphasis added).  The provision does not require any other party, including Aspire Global Limited, the *holder* of the Note, to submit to the forum.  Nor does the Promissory Note—which states that it was executed eight weeks after the SPA—include any language purporting to negate or otherwise vary the SPA's mandatory foreign arbitration provision.  *See id.* at 1; SPA at 2 & § 13.2.

### C.   EBET Files In Nevada State Court And Omits Reference To The SPA's Arbitration Clause

On or around September 28, 2023, EBET filed a complaint in the Eighth Judicial District Court of the State of Nevada for Clark County, Case No. A-23-878606-C seeking to rescind the entire transaction.  *See* Compl.  EBET claims that Aspire fraudulently induced it into entering into the transaction, seeks rescission of the transaction, and alleges that Aspire breached the terms of the SPA and the operator service agreements as well as the implied covenant of good faith and fair dealing.  While the complaint extensively refers to the SPA, EBET did not attach the SPA as an exhibit and omitted to mention that the SPA contains a mandatory arbitration provision.

### D.   Aspire Removes This Action

On November 7, 2023, Aspire filed a notice of removal on the basis that this Court has federal question jurisdiction under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "Convention"), 9 U.S.C. § 205, and 28 U.S.C. § 1331 and, as an independent basis, subject matter jurisdiction under 28 U.S.C. § 1332 because there is complete diversity among the parties and the amount in controversy requirement is met.  ECF No. 1.

### ARGUMENT

This entire action belongs in an arbitral forum in Malta.  Each of EBET's four claims is governed by a mandatory arbitration provision in the SPA and should be dismissed for that reason alone.  Moreover, the complaint should be dismissed because this Court lacks jurisdiction over each

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

of the Aspire entities.  Beyond these dispositive infirmities, EBET fails to allege fraud in the inducement with any particularity, let alone particularity sufficient to satisfy Federal Rule of Civil Procedure 9(b).

## I.    EBET'S CLAIMS ARE SUBJECT TO MANDATORY ARBITRATION IN MALTA

While there are multiple bases for dismissing this case, the Court, first and foremost, should not allow EBET to circumvent the parties' binding arbitration agreement.  EBET and Aspire manifested their assent to arbitrate when each of them signed the SPA and agreed that "any dispute, controversy or claim arising out of or in connection with [the SPA], or the breach, termination, interpretation, or validity thereof," if not resolved by good faith negotiations, "***shall be decided exclusively by arbitration in Malta***."  SPA § 13.2 (emphasis added).  This agreement to arbitrate plainly falls under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, as implemented by Chapter 2 of the Federal Arbitration Act ("FAA").

When, as here, a plaintiff commences an action against a defendant in which the subject matter relates to an arbitration agreement between the parties enforceable by the FAA, the Court can enforce the arbitration agreement by dismissing the complaint.  *See Thinket Ink Info. Res., Inc. v. Sun Microsys., Inc.*, 368 F.3d 1053, 1060 (9th Cir. 2004); *accord Sparling v. Hoffman Const. Co.*, 864 F.2d 635, 638 (9th Cir. 1988) (9 U.S.C. § 3 "did not limit the court's authority to grant a dismissal in this case"); *Westfall v. USAA Sav. Bank*, 2020 WL 5097510, at *2 (D. Nev. Aug. 27, 2020) ("Failure to exhaust non-judicial remedies, such as the failure to arbitrate under an arbitration clause, is a proper, though 'non-enumerated,' reason for granting a Rule 12(b) motion to dismiss.").  The Court should, consistent with the FAA and federal policy that strongly favors the recognition and enforcement of international arbitration agreements, dismiss the complaint in its entirety so that the asserted claims can be resolved in arbitration.

### A.    The SPA Is Governed By The New York Convention

The New York Convention requires each signatory, including the United States, "to recognize an agreement in writing under which the parties undertake to submit to arbitration all or any differences which have arisen or which may arise between them in respect of a defined legal relationship."  Convention, Art. II ¶ 1.  The FAA, which implements the Convention, provides that

Pisanelli Bice
400 South 7th Street, Suite 300
Las Vegas, Nevada 89101

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

any "arbitration agreement … arising out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract, or agreement described in [9 U.S.C. § 2], falls under the Convention." 9 U.S.C. § 202.  While the Convention does not define the word "commercial," within "the field of international arbitration, 'commercial' refers to matters or relationships, whether contractual or not, that arise out of or in connection with commerce." *Human v. Czech Rep. Ministry of Health*, 824 F.3d 131, 136 (D.C. Cir. 2016) (cleaned up) (interpreting the Convention) (citing Restatement (Third) of U.S. Law of Int'l Comm. Arbitration § 1–1 (Am. L. Inst. 2012)).

The SPA "fall[s] under" the New York Convention.  9 U.S.C. § 202.  It is a written agreement to which EBET and the Aspire entities are parties that governs the legal, commercial relationship among EBET and the Aspire entities.  The arbitration provision in the SPA contemplates arbitral proceedings outside of the United States.  SPA § 13.2.  And at least one party to the arbitration agreement—here, the Aspire entities, each of which is incorporated in Malta—is a foreign corporation.  *See* 9 U.S.C. § 202.

While courts generally "apply a *presumption* in favor of arbitrability" when a contract contains an arbitration clause, *Wynn Resorts v. Atl.-Pac. Cap., Inc.*, 497 F. App'x 740, 742 (9th Cir. 2012) (emphasis added) (citing *AT&T Techs., Inc. v. Commc'ns Workers of Am.,* 475 U.S. 643, 650 (1986)), federal law ***mandates*** giving effect to international arbitration agreements.  Indeed, the Supreme Court has instructed lower courts to apply "the emphatic federal policy in favor of arbitral dispute resolution" with "***special force*** in the field of international commerce." *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985) (emphasis added); *see also Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 n.15 (1974) (the "principal purpose underlying" the Convention's implementation was to recognize and enforce "commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed").

Consistent with that policy and purpose, the New York Convention, through Section 206 of the FAA, requires the Court to "direct that arbitration be held in accordance with the [parties' arbitration] agreement."  9 U.S.C. § 206; *see Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985) ("[T]he [FAA] leaves no place for the exercise of discretion by a district court, but instead

mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed").  To issue that order, the Court need only find that (1) "a valid agreement to arbitrate exists" and (2) "the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).  Both elements are met here.

### 1.  The SPA Contains A Valid Agreement To Arbitrate

Of all the agreements referenced in the complaint, only one—the SPA—is executed by *all* parties to this case.  And there can be no serious dispute that the SPA's arbitration provision is valid.  As described above, the SPA—to which EBET is a signatory and thus bound by its terms— is a "contract evidencing a transaction involving commerce," and as such is subject to the FAA. 9 U.S.C. § 2.  The FAA makes clear that any arbitration agreement within its scope—such as the SPA—"shall be valid, irrevocable, and enforceable."  *Chiron Corp.*, 207 F.3d at 1130 (quoting 9 U.S.C. § 2).

### 2.  The SPA's Arbitration Provision Encompasses All Of EBET's Claims

Arbitration is required here because the merits of the dispute squarely fall within the parties' agreement to arbitrate.  The arbitration clause in the SPA, which covers "any dispute, controversy or claim ***arising out of or in connection with*** [the SPA], or the breach, termination, interpretation, or validity thereof," SPA § 13.2 (emphasis added), is the very definition of a "broad" arbitration clause.  As the Ninth Circuit explained in *Simula, Inc. v. Autoliv, Inc.*, "[e]very court that has construed the phrase 'arising in connection with' in an arbitration clause has interpreted that language broadly."  175 F.3d 716, 721 (9th Cir. 1999); *see also Homestead Lead Co. v. Doe Run Res. Corp.*, 282 F. Supp. 2d 1131, 1138 (N.D. Cal. 2003) ("Every court that has construed the phrase 'arising in connection with' within an arbitration clause has found it to be broad."); *Elko Broadband Ltd. v. Dhabi Holdings PJSC*, 2020 WL 6435754, at *3-4 (D. Nev. Nov. 2, 2020) (interpreting an arbitration clause applicable to "any dispute 'under or in connection with'" the agreement "broadly," and compelling arbitration of all claims).  For EBET's claims to be arbitrable, the factual allegations of the complaint "need only 'touch matters' covered by the contract

containing the arbitration clause and ***all doubts are to be resolved in favor of arbitrability***." *Simula, Inc.*, 175 F.3d at 721 (emphasis added) (quoting *Mitsubishi Motors Corp.*, 473 U.S. at 625 n.13).

All of EBET's claims "touch matters" in the SPA.[3] The clearest application is Count III, which, by alleging breaches of the SPA as well as other transaction-related documents, squarely falls within the arbitration provision. Count IV, which alleges a breach of the implied covenant of good faith and fair dealing, and which rests on the allegation that Aspire "deliberately contravened the intention and spirit of the" SPA and other transaction contracts, Compl. ¶ 44, is also squarely within the scope of the provision. The SPA's arbitration clause also directly applies to Count II, which seeks rescission of the entire transaction, which necessarily includes the SPA, and attacks the "validity" of the SPA. SPA § 13.2.

Finally, the arbitration provision captures Count I—EBET's claim of fraud in the inducement of the SPA and other deal contracts—which again challenges the "validity" of the SPA. SPA § 13.2. The Supreme Court has repeatedly held that an attack on the validity of a contract with an arbitration provision, such as here, is itself subject to arbitration. *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 444-46 (2006); *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 (1967) ("[T]he statutory language [of the FAA] does not permit the federal court to consider claims of fraud in the inducement of the contract generally."). It is well-established that "fraud claims must be submitted to arbitration unless the arbitration clause itself was fraudulently induced." *Sparling*, 864 F.2d at 638. EBET does not allege—nor could it—that the arbitration clause itself was fraudulently induced. Thus, Count I also properly belongs before an arbitrator. *See Simula*, 175 F.3d at 726 (holding fraud in the inducement claim is a "question[] for the arbitrator"); *Elko Broadband*, 2020 WL 6435754, at *3 ("Moreover, the entire case, and not individual claims, go to arbitration if they are connected to the contractual agreement.").

---

[3] Indeed, in a Form 8-K filed with the Securities and Exchange Commission on December 1, 2023, EBET stated: "The complaint [in this action] alleges fraud in the inducement, rescission, breach of contract, and breach of the implied covenant of good faith and fair dealing in connection with the acquisition by the Company of certain gaming assets pursuant to a share purchase agreement dated October 1, 2021 between [EBET] and the Aspire Entities." Bice Decl. Ex. F. EBET's own SEC filing describing this lawsuit does not refer to agreement other than the SPA. *See id.*; *Dreiling v. Am. Exp. Co.*, 458 F.3d 942, 946 n.2 (9th Cir. 2006) ("SEC filings" are "subject to judicial notice" on a motion to dismiss).

Pisanelli Bice
400 South 7th Street, Suite 300
Las Vegas, Nevada 89101

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

The forum-selection clause in the Promissory Note does not excuse EBET's obligation to arbitrate its claims.  To start, only EBET, in its capacity as borrower, agreed to submit to the jurisdiction of the federal and state courts of Nevada to resolve disputes arising out of the Promissory Note.  *Compare* Promissory Note § 4.6 ("The **borrower** hereby submits to the exclusive jurisdiction of the United States federal and state courts located in Clark County, Nevada" (emphasis added)), *with* SPA § 13.2 ("the parties to this Agreement" agree that "any dispute, controversy or claim arising out of or in connection with this Agreement . . . shall be decided exclusively by arbitration in Malta").  Aspire did not agree in the Promissory Note to submit to a Nevada forum, and it did not disclaim its earlier agreement to arbitrate disputes relating to the transaction.

EBET cannot plausibly contend that the parties intended for the forum selection clause in the Promissory Note to supersede the arbitration provision in the SPA.  The parties entered into the SPA on October 1, 2021.  SPA at 1.  The Promissory Note was not executed until November 29, 2021.  Promissory Note at 1.  Whether a later-in-time contract between the same parties discharges or supersedes a prior agreement turns on the intent of the parties to the contract.  *MMAWC, LLC v. Zion Wood Obi Wan Tr.*, 448 P.3d 568, 572 (Nev. 2019) (dispute involving later-in-time settlement agreement did not abrogate agreement to arbitrate set out in contract underlying settled claims); *see also Morris DeLee Fam. Tr. v. Cost Reduction Eng'g, Inc.*, 705 P.2d 161, 163 (Nev. 1985) ("Appellant never indicated an intent to have this agreement replace or supersede respondents' obligations under the original agreement.").  And, here, neither party ever manifested an intent for the Promissory Note's limited forum selection clause to extinguish the SPA's arbitration provision.

*First*, the Promissory Note is not a substitute for the SPA.  To the contrary, the contracts work together:  the Promissory Note was the means by which EBET was able to finance part of the purchase contemplated by the SPA.  Indeed, the Promissory Note is expressly required by section 3.1(b) of the SPA, and the terms of the Promissory Note are specified in a schedule to SPA.  SPA § 3.1(b) & Schedule 3.1(i).

*Second*, if the parties intended for the jurisdiction provision in the Promissory Note to supersede the binding arbitration agreement made just eight weeks earlier in the SPA, they would

have made that intention clear.  Far from demonstrating an intention to override the SPA's dispute resolution provision, the parties included a narrow forum-selection clause in the Promissory Note that expressly applies only to the borrower, EBET.  Indeed, nothing in the Promissory Note even suggests an intention to override the detailed, comprehensive arbitration provision in the SPA, the document at the center of the parties' transaction.  Moreover, the governing law and forum selection clauses in the TSA and the Operator Services Agreements, executed by EBET and Aspire the same day as the Promissory Note, are further evidence of the parties' intent to address disputes in Malta.  Each of the SPA, the TSA, and the Operator Services Agreements provides for the application of Maltese law and identifies Malta as the exclusive jurisdiction for resolving disputes.  *See* TSA at 1 & § 8(a); Unregulated Markets Operator Services Agreement § 16.12; Regulated Markets Operator Services Agreement § 16.12.  Although EBET's complaint invokes all of these agreements, it wholly ignores that the parties have unequivocally and repeatedly selected Malta as their preferred forum to resolve disputes in connection with the transaction by bringing its action in Nevada.  The Court should reject any attempt by EBET to skirt its obligations to arbitrate its challenge to the *entire* transaction by relying on one inapplicable provision in an ancillary financing agreement.

### B.    In The Alternative, The Court Should Stay The Case And Order EBET To Submit Its Claims To Arbitration

Even if the Court does not dismiss the complaint in its entirety—which, for the reasons above, it should—at minimum, it should stay this action under 9 U.S.C. § 3 and direct that arbitration be held under 9 U.S.C. § 206 while the case is stayed.  *See* 9 U.S.C. § 3 ("on application of one of the parties," the Court "shall" stay proceedings on an arbitrable claim until the arbitration has concluded "in accordance with the terms of the [arbitration] agreement").[4]

## II.    THE COURT LACKS PERSONAL JURISDICTION OVER ASPIRE

The complaint also should be dismissed for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2).  There is no basis to exercise general or specific jurisdiction over Aspire.  Nevada's long-arm jurisdictional statute is coterminous with the due process limitations of

---

[4]    For the avoidance of doubt, Aspire requests that, to the extent necessary, this Motion function as its "application" for a stay pending arbitration under 9 U.S.C. § 3.

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

the U.S. Constitution.  *Arbella Mut. Ins. Co. v. Eighth Jud. Dist. Ct. ex rel. Cnty. of Clark*, 134 P.3d 710, 712 (Nev. 2006); *see* Nev. Rev. Stat. § 14.065.  Accordingly, to subject Aspire to jurisdiction in Nevada, EBET must allege that Aspire has sufficient "minimum contacts" with the forum.  The complaint fails to do so.

### A.    Aspire Is Not Subject To General Jurisdiction In Nevada

Aspire is not "at home" in Nevada.  *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).  It is well established that the "paradigmatic locations" where general jurisdiction is appropriate for an entity are its place of incorporation and its principal place of business.  *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1069 (9th Cir. 2015).  EBET acknowledges, as it must, that each of the Aspire entities is a company incorporated under the laws of Malta.  Compl. ¶¶ 3-6.  Each of the Aspire entities has a principal place of business in Malta, as well.  Maimon Decl. ¶ 5.[5]  Nor is this an "exceptional case" in which Aspire could otherwise be deemed to be "at home" in Nevada.  *Martinez v. Aero Caribbean*, 764 F.3d 1062, 1070 (9th Cir. 2014).  Aspire has no offices in Nevada, is not registered to do business in Nevada, neither owns nor rents any property in the U.S., and has no U.S. mailing addresses or phone numbers.  Maimon Decl. ¶ 6.  Simply put, Aspire has no "continuous and systematic" business contacts that would permit the Court to exercise general jurisdiction over it.  *Daimler*, 571 U.S. at 127.

### B.    There Is No Basis To Exercise Specific Jurisdiction Over Aspire

EBET does not allege that any of the Aspire entities had enough contacts with Nevada relating to the challenged transaction to establish specific jurisdiction.  EBET has the burden to show that (i) the Aspire entities purposefully directed their activities toward Nevada or purposefully availed themselves of the privilege of acting in Nevada, and (ii) EBET's claims arise out of or relate to Aspire's forum-related activities.  Only if EBET can satisfy those two prongs does the Court need to consider whether the exercise of personal jurisdiction is reasonable.  *See Schwarzenegger*

---

[5]    The Court may "consider extrinsic evidence when determining whether it has personal jurisdiction" over Aspire.  *See Righthaven, LLC v. Virginia Citizens Def. League, Inc.*, 2011 WL 2550627, at *6 n.1 (D. Nev. June 23, 2011) (citing *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004)).

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

*v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).  EBET fails to make even a prima facie showing of jurisdictional facts.

> ### 1.   *Aspire Did Not Purposefully Direct Its Activities Toward Nevada Or Avail Itself Of The Privileges Of Doing Business In Nevada*

The complaint alleges no conduct constituting purposeful availment by Aspire.  *EBET's* home in Nevada is irrelevant to pleading any facts about *Aspire's* contacts with the forum state.  *See Walden v. Fiore*, 571 U.S. 277, 284 (2014) ("We have consistently rejected attempts to satisfy the defendant-focused 'minimum contacts' inquiry by demonstrating contacts between the plaintiff (or third parties) and the forum State.").  And the mere act of contracting with a resident of the forum state "clearly" does not establish sufficient minimum contacts in the forum.  *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478 (1985).  The location of the parties' prior business negotiations does not establish jurisdiction, either.  Aspire did not sign the SPA, or any of the transaction documents, in Nevada.  Maimon Decl. ¶¶ 10, 12, 13.  And none of the negotiations over the terms of the SPA or the transaction writ large took place in Nevada.  *Id.* ¶¶ 10, 11.  Nor can EBET point to the future consequences of the transaction:  EBET and Aspire entered into the SPA pursuant to which EBET would be authorized to operate iGaming in certain *European*-based markets, including in markets regulated by the Great Britain Gambling Commission, the Danish Gambling Authority, and Maltese Gaming Authority.  Compl. ¶¶ 15-16.

Further, EBET cannot rely on service of process on any of Aspire's corporate officers while in the forum to create jurisdiction over any of the Aspire entities.  The Ninth Circuit has rejected the concept of "corporate tag jurisdiction":  service of process on an officer of a corporation in the forum—alone—does not establish personal jurisdiction over the corporation.  *Martinez*, 764 F.3d at 1067.  Thus, even though EBET served an Aspire director while he was attending a conference in Las Vegas, *see* Maimon Decl. ¶ 14, that did not suffice to subject Aspire—a Maltese company with its principal place of business in Malta, which negotiated the transaction from outside of the U.S.—to the jurisdiction of the Nevada courts.  *Martinez*, 764 F.3d at 1067 ("Plaintiffs contend that their service on [defendant's] vice president of marketing while he was in California gave the district court general personal jurisdiction over [defendant].  We disagree.").

13

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

EBET can fare no better by pointing to the forum-selection clause in the Promissory Note to try to establish jurisdiction.  Forum selection clauses are enforced under general contract principles.  So, while "a forum selection clause may give rise to waiver of objections to personal jurisdiction," that is the case only if the "defendant agrees to be so bound."  *Holland Am. Line Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 458 (9th Cir. 2007).  Here, as noted above, the forum clause in the Promissory Note does not bind *Aspire* to a Nevada forum.  To the contrary, the express language of the Promissory Note provides that only the "*borrower*"—*i.e.*, EBET—agrees to such a forum.  Nothing in the Promissory Note could be read to suggest that *Aspire* consented to jurisdiction in Nevada.[6]  Promissory Note § 4.6 (emphasis added).

### 2. EBET's Claims Do Not Arise Out Of Or Relate To Aspire's Activities In Nevada

Because there was no jurisdictionally significant conduct by Aspire, EBET cannot satisfy its burden of showing that its claims arise from Aspire's forum-related activities.  Under the Ninth Circuit's "but for" test for analyzing the second prong of specific jurisdiction, a lawsuit arises out of or relates to a defendant's contacts with the forum when a "***direct nexus exists*** between those contacts and the cause of action."  *Yamashita v. LG Chem, Ltd.*, 62 F.4th 496, 504 (9th Cir. 2023) (emphasis added).  The complaint includes no allegations that connect Aspire to Nevada, let alone that could connect EBET's lawsuit to Aspire's contacts with the forum.  *Ranza*, 793 F.3d at 1068.  Accordingly, EBET will not be able to establish that its alleged injuries arose out of any contacts between Aspire and Nevada.

### 3. Exercising Personal Jurisdiction Over Aspire Is Not Reasonable

Because the complaint alleges no contacts between Aspire and Nevada, EBET has failed to satisfy its prima facie burden and the Court need not consider whether the exercise of specific jurisdiction over Aspire would be reasonable.  *See Schwarzenegger*, 374 F.3d at 802.  But even if it did, traditional notions of fair play and substantial justice do not support the exercise of personal

---

[6]     Moreover, as set forth in the previous section, *all of the parties* agreed in the SPA—the principal document governing the transaction—to resolve any disputes in connection with the transaction in arbitration, *in Malta*.

jurisdiction over Aspire.  Here, each of the seven factors that courts balance to determine whether jurisdiction is reasonable weighs ***against*** proceeding in this forum.  *See FDIC v. Brit.-Am. Ins. Co.*, 828 F.2d 1439, 1442 (9th Cir. 1987) (setting forth seven factors to determine reasonableness of asserting jurisdiction over a nonresident defendant).

*Aspire Did Not Inject Itself Into The Forum.*  As detailed above, Aspire has not purposefully injected itself into Nevada's affairs.  Aspire sold various assets to EBET so that EBET could operate iGaming platforms in international markets including those regulated by Great Britain, Denmark.  Compl. ¶ 16.  The parties neither negotiated nor signed the transaction agreements in Nevada.

*Existence Of An Alternative Forum In Malta.*  There is an alternative forum available to resolve EBET's claims: an arbitration in Malta.  The parties expressly contracted to arbitrate there.  Federal policy and the FAA strongly favor the "recognition and enforcement of commercial arbitration agreements in international contracts."  *Scherk*, 417 U.S. at 520 n.15.

*Burden On Aspire Of Litigating In Nevada.*  Aspire's burden in defending a suit in Nevada weighs against asserting jurisdiction as each of the Aspire entities is based in Malta.  Maimon Decl. ¶ 4.  Notwithstanding technological advances in communication, when, as here, Aspire "has done little to reach out to the forum state, the burden of defending itself in a foreign forum militates against exercising jurisdiction."  *Brit.-Am. Ins. Co.*, 828 at 1444.

*Conflict With Foreign Sovereignty Interests Weighs Against Jurisdiction.*  The Aspire entities are residents of a foreign nation; the SPA, TSA, and Operator Services Agreements designate Maltese law as the governing law; and the SPA provides for mandatory arbitration in Malta.  *See Gates Learjet Corp. v. Jensen*, 743 F.2d 1325, 1333 (9th Cir. 1984) ("A foreign nation presents a higher sovereignty barrier than that between two states.").

*Nevada's Interest In Adjudicating The Dispute Is Minimal*.  When, as here, the parties designated a foreign forum (Malta) in the governing law provision for the transaction at issue, Nevada's interest in adjudicating this dispute is minimal.  *See Brit.-Am. Ins. Co.*, 828 F.2d at 1444.

*It Is More Efficient To Resolve This Dispute In Malta.*  The contract interpretation for each of the SPA, Operator Service Agreements, and TSA is governed by Maltese law.  (SPA) § 13.2; Unregulated Markets Operator Service Agreement § 16.12; Regulated Markets Operator Service

Agreement § 16.12; TSA § 8(a).  EBET's dispute arises from Aspire's alleged failure to comply with the terms of these agreements and certain representations that Aspire allegedly made in connection with negotiating the transaction.  *See, e.g.*, Compl. ¶¶ 10-12.  Plus, each of the Aspire entities is Malta-based and Aspire's leadership team is located abroad.  So, witnesses and documentary evidence may already be located in Malta, obviating the need to transport them a considerable distance to Nevada.  And while this Court is capable of addressing issues of Maltese law, presumably tribunals located in Malta have more experience doing so.

*EBET's Desired Forum Should Receive Minimal Weight*.  EBET might prefer to litigate in its chosen home forum, but the complaint offers no reason to suggest that EBET would not receive fair treatment if it arbitrates in Malta, as it agreed to do.

## III.   COUNT I FAILS TO PLEAD FRAUD WITH PARTICULARITY

For the foregoing reasons, the Court should dismiss the complaint in favor of arbitration and because it cannot exercise personal jurisdiction over the Aspire entities.  But even if the Court were to assess the merits of the complaint—which it need not do—it should dismiss EBET's attempt to allege fraud in the inducement as plainly insufficient.

Count I should be dismissed for the simple reason that EBET has failed to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); Nev. R. Civ. P. 9(b). EBET brings its fraud claim against Aspire based on three sets of representations that one or more of the Aspire entities allegedly made (i) "regarding the number of player accounts," Compl. ¶ 10, (ii) "regarding the fact that they were taking all necessary measures to obtain an iGaming license in Germany," *id.* ¶ 11, and (iii) "regarding the accuracy of their operating expenses and revenues," *id.* ¶ 12.  "Fraud claims against corporate or business entities require allegations that *specifically identify names of individuals who made the misrepresentation*, that they had authority to speak for the corporation, and what was said or written and when." *Gage v. Cox Commc'ns, Inc.*, 2017 WL 1536219, at *2 (D. Nev. Apr. 27, 2017) (emphasis added).  EBET has done none of that.

For example, EBET's broad allegations that Aspire "made false representations to EBET regarding the number of player accounts," Compl. ¶¶ 22, 30, include no particularized supporting detail.  EBET describes the player accounts as a "key metric in determining net revenue and

16

profitability for EBET." *Id.* ¶ 10.  But the complaint does not state *what* Aspire allegedly represented to EBET about the number of player accounts.  It provides no information about the actual number of accounts, or why the number that Aspire allegedly represented to EBET was incorrect.  Similarly, the complaint does not attempt to state *who* made the purported statements, or *when* or *where* the statements were made—other than asserting that such statements were made at some unidentified time over a period of more than four months—making it impossible for Aspire to identify and assess any statements upon which EBET purports to rely.  Nor does EBET allege *how* the representation was apparently made, such as whether it was an oral or written representation.  The complete lack of particularized facts applies equally to EBET's additional fraud allegations concerning Aspire's efforts to obtain a gaming license and purported statements about operating expenses and revenues.  The purpose of the particularized pleading requirement for a fraud claim is to adequately place defendants on notice of the claim.  *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001).  The complaint fails to do that.[7]

## CONCLUSION

For the above reasons, the Court should dismiss the complaint in favor of arbitration in Malta, or, in the alternative, for lack of personal jurisdiction.  If the Court assesses the merits of the claims, which properly should be addressed only in a Maltese arbitration, the Court should dismiss the cause of action for fraud in the inducement for failure to state a claim.

---

[7]     For the avoidance of doubt, the Aspire entities do not concede that the remaining claims are viable.  Given that this dispute is not properly before this Court, however, Aspire does not further address the merits of the claims in this motion.

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

DATED:  December 12, 2023

PISANELLI BICE PLLC

By:   /s/ Todd L. Bice
           Todd L. Bice, Esq., #4534
           Emily A. Buchwald, Esq., #13442
           Daniel R. Brady, Esq., #15508
           400 South 7th Street, Suite 300
           Las Vegas, Nevada 89101

           QUINN EMANUEL URQUHART &
            SULLIVAN, LLP
           Robert S. Loigman (admitted *pro hac vice*)
           Ryan A. Rakower (admitted *pro hac vice*)
           Caitlin E. Jokubaitis (admitted *pro hac vice*)
           51 Madison Ave., 22nd Floor
           New York, NY 10010

*Attorneys for Defendants*
*Aspire Global International Limited,*
*AG Communications Limited,*
*Aspire Global 7 Limited, and Aspire Global*
*Limited*

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PISANELLI BICE
400 SOUTH 7TH STREET, SUITE 300
LAS VEGAS, NEVADA 89101

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I am an employee of Pisanelli Bice PLLC, and that on this 12th day of December, 2023, I caused to be e-filed/e-served a true and correct copy of the above and foregoing **DEFENDANTS' MOTION TO DISMISS THE ACTION AND COMPEL INTERNATIONAL ARBITRATION UNDER 9 U.S.C.§§ 3 AND 206, OR, IN THE ALTERNATIVE, TO DISMISS UNDER FED. R. CIV. P. 12(B)(2) FOR LACK OF PERSONAL JURISDICTION, OR, IN THE ALTERNATIVE, TO DISMISS IN PART UNDER FED. R. CIV. P. 12(b)(6)** to all parties registered with the Court's CM/ECF system.

Michael C. Van, Esq
Garrett R. Chase, Esq.
VC2 LAW
8985 South Eastern Avenue, Suite 100
Las Vegas, Nevada 89123
michael@vc2law.com
garrett@vc2law.com

Farhad Novian, Esq.
(*pending admission pro hac vice*)
Andrew B. Goodman
(*pending admission pro hac vice*)
NOVIAN & NOVIAN, LLP
1801 Century Park East, Suite 1201
Los Angeles, California 90067
farhad@novianlaw.com
agoodman@novianlaw.com

*Attorneys for Plaintiff EBET, Inc.*

_/s/ Shannon Dinkel_
An Employee of Pisanelli Bice, PLLC