TRANSCRIBED FROM DIGITAL RECORDING

```
 1                IN THE UNITED STATES DISTRICT COURT

 2                   FOR THE DISTRICT OF NEVADA

 3    EBET, INC.,                  )
                                   ) Case No. 2:23-cv-01830-GMN-DJA
 4              Plaintiff,         )
                                   ) Las Vegas, Nevada
 5    vs.                          ) February 27, 2024
                                   ) Courtroom 3A
 6    ASPIRE GLOBAL INTERNATIONAL  )
      LIMITED; AG COMMUNICATIONS   )
 7    LIMITED; ASPIRE GLOBAL 7     )
      LIMITED; ASPIRE GLOBAL PLC,  )
 8                                 ) Recording method:
                Defendants.        ) Liberty/CRD
 9    _____ ) 1:31 p.m. - 2:02 p.m.
                                     MOTIONS HEARING
10
                           CERTIFIED COPY
11
                     TRANSCRIPT OF PROCEEDINGS
12          BEFORE THE HONORABLE DANIEL J. ALBREGTS
          UNITED STATES DISTRICT COURT MAGISTRATE JUDGE
13

14    APPEARANCES:

15    For the Plaintiff:     JOHN D. TENNERT, ESQ.
                             FENNEMORE CRAIG, P.C.
16                           7800 Rancharrah Parkway
                             Reno, Nevada 89511
17                           (775) 788-2212

18

19    (Appearances continued on page 2.)

20    Recorded by:          Jerry Ries

21    Transcribed by:       Amber M. McClane, RPR, CRR, CCR #914
                            United States District Court
22                          333 Las Vegas Boulevard South, Room 1334
                            Las Vegas, Nevada 89101
23                          (702) 384-0429 or AM@nvd.uscourts.gov

24    Proceedings recorded by electronic sound recording.
      Transcript produced by mechanical stenography and computer.
25
```

TRANSCRIBED FROM DIGITAL RECORDING

```
1    APPEARANCES CONTINUED:

2    For the Defendants:

3         ROBERT SCOTT LOIGMAN, ESQ.
          CAITLIN E. JOKUBAITIS, ESQ.
4         QUINN EMANUEL URQUHART & SULLIVAN, LLP
          51 Madison Avenue, 22nd Floor
5         New York, New York 10010
          (212) 849-7000
6

7    -AND-

8         TODD L. BICE, ESQ.
          PISANELLI BICE PLLC
9         400 South 7th Street, Suite 300
          Las Vegas, Nevada 89101
10        (702) 214-2100

11

12                           *  *  *  *  *

13

14

15

16

17

18

19

20

21

22

23

24

25
```

UNITED STATES DISTRICT COURT
Amber McClane, RPR, CRR, CCR #914

TRANSCRIBED FROM DIGITAL RECORDING

1    LAS VEGAS, NEVADA; TUESDAY, FEBRUARY 27, 2024; 1:31 P.M.

2    --o0o--

3    P R O C E E D I N G S

4    **COURTROOM ADMINISTRATOR:**   EBET, Inc. versus Aspire

5    Global International Limited, et al., 2:23-civil-1830-GMN-DJA.

6    This is before the Court on Motion Docket 33 and the

7    stipulated Discovery Plan and Scheduling Order,

8    Docket Number 40.

9    Counsel, please make your appearance for the record.

10    **MR. TENNERT:**   Good afternoon, Your Honor.   John

11    Tennert of Fennemore Craig on behalf of the plaintiff, EBET,

12    Inc.

13    **THE COURT:**   Hi, Mr. Tennert.   Good afternoon.

14    **MR. BICE:**   Good afternoon, Your Honor.   Todd Bice on

15    behalf of the defendants, and with me is Robert Loigman and

16    Caitlin Jokubaitis from Quinn Emanuel.   They're both admitted

17    *pro hac vice*.   Thank you.

18    **THE COURT:**   All right.   Good afternoon to all of you.

19    All right.   We are here, as my courtroom deputy

20    indicates, on Number 33, which is defendant's motion to stay

21    discovery, and Number 40, which is a Discovery Plan and

22    Scheduling Order.

23    The parties may not be familiar with how I conduct

24    these hearings, but for your information I will be providing

25    some brief background for the purposes of determining this

UNITED STATES DISTRICT COURT
Amber McClane, RPR, CRR, CCR #914

TRANSCRIBED FROM DIGITAL RECORDING

1    motion.  And then I'll outline the parties' respective

2    positions, outline the legal standard the Court will consider,

3    and then I'll have some questions for the parties.  And then I

4    will rule from the bench on these, and the transcript from

5    today's hearing will be the order disposing of these motions

6    so that any party that wants to appeal, the transcript will be

7    the order.

8            So, with that, the background of this case, again,

9    for the purposes of determining this motion -- it's not

10   intended to be a comprehensive background of the case.  This

11   case arises out of Plaintiff EBET, Inc.'s purchase of certain

12   business-to-consumer assets from Defendant Aspire, a

13   Malta-based owner/operator of several iGaming platforms.  The

14   purchase occurred in October of 2021 and was memorialized in a

15   Share Purchase Agreement, otherwise known as an SPA.

16           EBET claims that Aspire fraudulently induced it to

17   enter into the SPA, that Aspire breached the SPA and an

18   implied covenant and good faith and fair dealing clause

19   inherent in the SPA, and accordingly the entire transaction

20   should be rescinded.

21           Now, in their motion Defendant Aspire moves to stay

22   discovery pending resolution of its motion to dismiss and

23   compel arbitration.  Aspire argues that its motion to dismiss

24   disposes of the entire action and does not require additional

25   discovery.  Aspire argues that good cause exists to stay

TRANSCRIBED FROM DIGITAL RECORDING

1    discovery because the motion raises preliminary issues of

2    arbitrability and jurisdiction and because the parties will

3    incur undue burden and expense absent a stay.  And, finally,

4    because EBET will not be prejudiced by a stay of discovery.

5            EBET responds that Aspire cannot convince the Court

6    that it is unable to state a claim for relief, essentially

7    arguing Aspire will fail on its motion to dismiss.  EBET

8    spends a majority of their response arguing why Nevada is an

9    appropriate venue forum for this dispute and that Aspire

10   ignores forum selection clauses in four agreements executed by

11   the parties subsequent to and in connection with the SPA.

12   EBET argues that these subsequent agreements supersede the SPA

13   and none call for arbitration.  Finally, EBT -- EBET argues

14   there is no good cause to stay discovery because their claims

15   are not arbitrable, the dispute regarding jurisdiction does

16   not create good cause for a stay, and because denial will not

17   cause undue burden or expense.  EBET concludes that it will

18   suffer prejudice if discovery is not stayed.

19           Aspire replies that EBET mistakes the standard for

20   granting a motion to stay, focusing primarily on the

21   "preliminary peek" test disfavored by this Court.  Regardless,

22   Aspire argues a preliminary peek at their motion to dismiss

23   and to compel arbitration confirms its merits.  Aspire adds

24   the other relevant factors unrelated to the merits support a

25   stay because proceeding with discovery will deprive Aspire of

TRANSCRIBED FROM DIGITAL RECORDING

1   the bargained-for benefits of arbitration, discovery will

2   impose substantial burden on them, and because EBET will not

3   be harmed by a stay.

4          Now, the legal standard that the Court will apply as

5   it relates to motions to stay discovery -- as I spill my

6   too-full water all over me -- Federal Rule of Civil Procedure

7   does not provide for automatic, blanket stays of discovery

8   because a dispositive motion is pending.  The Court may stay

9   discovery under Federal Rule of Civil Procedure 26(c), the

10  standard for which is good cause.

11         Now, the Ninth Circuit has not provided a test or

12  rule for good cause, but it has set parameters.  A court --

13  for instance, a court may stay discovery when it is convinced

14  that the plaintiff will be unable to state a claim upon which

15  relief can be granted, and that's *Wood versus McEwen*, 644 F.2d

16  797, 801.  It's a Ninth Circuit case from 1981.

17         On the other hand, the Court may not stay discovery

18  when discovery is needed to litigate the dispositive motion.

19  And that's *Alaska Cargo Transportation, Inc. versus Alaska*

20  *Railroad Corporation*, 5 F.3rd 378 at 383, and that's a

21  Ninth Circuit case from 1993.

22         Now, based on this Ninth Circuit law, courts in the

23  district of Nevada have often applied what is called the

24  "preliminary peek" test, and that comes from *Kor Media Group,*

25  *LLC versus Green*, 294 F.R.D. 579, and that's a 2013 case from

TRANSCRIBED FROM DIGITAL RECORDING

1    the district of Nevada.  This test evaluates the propriety of

2    the stay in accomplishing the goals of Rule 1 of the Rules of

3    Civil Procedure; that is, a just, speedy, and inexpensive

4    determination of the action.  That's *Tradebay -- Tradebay, LLC*

5    *versus eBay, Inc.*, 278 F.R.D. 597 at page 603.  That's a

6    district of Nevada case from 2011.

7            Now, this Court has found that -- or at least another

8    court has found that the "preliminary peek" test can sometimes

9    be problematic as it can be inaccurate and inefficient, and I

10   refer the parties -- as you probably know -- the *Schrader*

11   *versus Wynn*, 2000 -- a 2021 Westlaw case at 4810324 from

12   October 14th, 2021.  Now, the analysis in *Schrader*, I believe,

13   provides a better analytic framework that's more appropriate

14   and which I adopt in my decisions regarding staying discovery.

15   That test asks if, Number 1, the dispositive motion can be

16   decided without further discovery and, Number 2, if good cause

17   exists, to stay discovery.

18           Once again, the question of good cause, it may be

19   established using the "preliminary peek" test, but it also may

20   be established by other factors not related to the merits of

21   the dispositive motion.  For example, in cases where a movant

22   seeks to stay discovery to prevent undue burden or -- or --

23   undue burden or expense, under Federal Rule of Civil Procedure

24   26(c)(1), in that instance the movant must establish what

25   undue burden or expense will result from discovery proceeding

TRANSCRIBED FROM DIGITAL RECORDING

1   when a dispositive motion is pending.  I think ultimately the

2   question, as guided by Rule 1 of the Federal Rules of Civil

3   Procedure, I'm trying to determine whether it is more just to

4   speed the parties along in discovery and other proceedings

5   while a dispositive motion is pending, or whether it is more

6   just to delay or limit discovery and other proceedings to

7   accomplish the inexpensive determination of the case.  And

8   that's the *Tradebay* case.

9        Finally, it's the burden of the party seeking the

10  order to show good cause by demonstrating harm or prejudice

11  that will result from discovery.  That's *Rivera versus Nibco,*

12  *Inc.*, 364 F.3rd 1057 at 1063, and that's a 2004 case from the

13  Ninth Circuit.

14        And so I would, with that, say -- Mr. Bice, I presume

15  you'll be arguing this primarily, or will somebody else?

16        **MR. BICE:**  Mr. Loigman will, Your Honor.

17        **THE COURT:**  All right.  Then I'll ask you -- and is

18  it pronounced Loigman?

19        **MR. LOIGMAN:**  Yes, Your Honor.

20        **THE COURT:**  Mr. Loigman, so I know that you talk

21  about the benefit of your negotiated bargain in the PSA [sic],

22  and that's one of the pieces of prejudice that will inure

23  if -- if I don't grant this.  What else -- what other

24  prejudices are there?  I mean, tell me a little bit more,

25  flush out the discovery and the issues that might be a problem

UNITED STATES DISTRICT COURT
Amber McClane, RPR, CRR, CCR #914

*Page 8*

TRANSCRIBED FROM DIGITAL RECORDING

1    for you if I don't stay discovery.

2            **MR. LOIGMAN:**  Sure, Your Honor.

3            First of all, with respect to the first point that

4    you mentioned, which is the prejudice because there is an

5    arbitration provision in the agreement, that's a very

6    significant prejudice and one that the U.S. Supreme Court has

7    repeatedly recognized is very substantial and one which the

8    Congress, of course, has incorporated into statutes as being a

9    particularly compelling federal purpose, particularly when

10   you're dealing with international commercial arbitration such

11   as you are here.

12           And, in fact -- one thing I should mention to

13   Your Honor is we sent over to plaintiff's counsel yesterday a

14   decision that came down on Friday, so we just found it, from

15   the district of Arizona issued by Judge Lanza which, with the

16   Court's permission, I'd like to reference to the Court.  I'm

17   happy to hand up a copy if it's helpful.  But the reason I --

18   I mention that, Your Honor, is because, as they pointed out in

19   that case, the Supreme Court in *Coinbase versus Bielski*, which

20   was just last year, explained that the benefits of arbitration

21   include efficiency, less expense, less intrusive discovery,

22   and the like.  And, in fact, because of that, even if a court

23   denies a motion to compel arbitration, as soon as that denial

24   is appealed, the case is stayed entirely; discovery is stayed,

25   along with the rest of the case.

TRANSCRIBED FROM DIGITAL RECORDING

1          And so one of the things that the Court pointed out

2   on Friday was, given that there would be a stay of the case if

3   it's appealed, even once there's a determination that --

4   against arbitration, a stay certainly makes sense before

5   there's a determination as to whether arbitration is

6   appropriate.

7          Now, with that said, the arbitration rules that would

8   apply here, which are the Maltese arbitration rules, they will

9   not -- surprisingly, much narrower than the broad federal

10  discovery rules, including discovery of third parties,

11  including depositions and the like.  And one of the reasons

12  why that is particularly relevant here, Your Honor, is that

13  Your Honor may have seen that this past Friday the plaintiffs

14  filed a motion for leave to file an amended complaint.  Now --

15          **THE COURT:**  I saw that on the docket.

16          **MR. LOIGMAN:**  In that motion for leave, they are

17  seeking to add new parties to this case, they are seeking to

18  broaden the case substantially.  That -- that complaint is not

19  before the Court right now.  It's not -- it's not the

20  [indiscernible] complaint.

21          But that said, this morning, just literally a few

22  hours before this hearing, the plaintiff served a third-party

23  subpoena on a company called Aristocrat.  And -- and just to

24  explain to Your Honor what this is, is that the defendants in

25  this case, which are various Aspire entities, their ultimate

UNITED STATES DISTRICT COURT
Amber McClane, RPR, CRR, CCR #914

TRANSCRIBED FROM DIGITAL RECORDING

1   parent is a company called NeoGames.  NeoGames has entered

2   into a sale agreement, is being acquired this upcoming year,

3   by a company called Aristocrat.  It's many times removed from

4   this case, but the plaintiffs have served a third-party

5   subpoena upon Aristocrat seeking a huge array of information.

6   I think there were 48 requests in that, first request being

7   the agreement for merger between Aristocrat and NeoGames,

8   neither of which are parties to this case.

9          That's the kind of -- first of all, the fact that it

10  was served just hours before the Court was going to consider

11  whether discovery should move forward at all seems to us to

12  be -- you know, obviously can't speak to their motives, but it

13  was a way to try to bring this case to Aristocrat's attention

14  before a discovery stay might come in place in order to

15  potentially interfere with the Aristocrat/NeoGames merger.

16         But that -- that type of discovery, very broad, very

17  intrusive, scorched-earth litigation is the kind of stuff that

18  we will be dealing with before there's even a determination as

19  to whether this case should go to arbitration.

20         **THE COURT:**  So that's the sort of prejudice above and

21  beyond the failure to get the benefit of your bargain as it

22  relates to the arbitration.  That, you say, is significant and

23  I shouldn't downplay that.  But on top of that, there are

24  other -- that's just yet one example of what will be

25  forthcoming if discovery's not stayed and that will cause

UNITED STATES DISTRICT COURT
Amber McClane, RPR, CRR, CCR #914

TRANSCRIBED FROM DIGITAL RECORDING

1   prejudice to -- to your client?

2          MR. LOIGMAN:  Right.  And to add to that, Your Honor,

3   as -- as cases I've noted, if a discovery stay is denied when

4   there's a motion for arbitration, in some respects that's like

5   denying the motion for arbitration itself.  Because limited

6   discovery is such a part and parcel of -- of -- of the

7   arbitration process.

8          THE COURT:  Well, that's what I -- and that was

9   the -- something else I wanted to ask you, and I looked at my

10  notes.  You know, the difference between the arbitration

11  discovery and what discovery would occur if I don't stay it,

12  and what I hear you say -- or what I hear you saying is that

13  the discovery -- if the arbitration provision is upheld and

14  your motion is granted, that discovery will be a lot narrower

15  in focus than what would be in a federal case?

16         MR. LOIGMAN:  So -- so two points to make on that.

17  One, it would certainly be a lot narrower as is typical in

18  arbitration --

19         THE COURT:  Right.

20         MR. LOIGMAN:  -- than it would be in a federal case.

21  Secondly, the discovery here is largely going to take place in

22  Europe.  That's where all of the Aspire entities are based.

23  That's where the services at issue take place.  They're not

24  here in Nevada.  They're in Europe, which means they're all

25  going to -- all the discovery's going to be subject to a layer

TRANSCRIBED FROM DIGITAL RECORDING

1    of European privacy protection laws; the GDPR, for example.

2            Now, I'm not saying that makes litigation in the

3    United States impossible.  There are times when you balance

4    those and discovery to be required.  But -- but what that does

5    is make discovery even more burdensome.  Because, first of

6    all, the Aspire entities will have to have counsel in Europe

7    in order to review the documents, to gather them because that

8    has to be done in Europe before the documents can even be

9    transmitted to the United States.  And in doing that they will

10   then need to redact all private information that's not

11   relevant to the case.

12           And in this case, for example, where they're seeking

13   records about the number of registered players, you know,

14   over, you know, somewhere -- I don't know the exact number but

15   hundreds of thousands, if not more, of registered players,

16   that -- the number may be relevant, but certainly the identity

17   of each player might not be relevant, their name or -- and so

18   that's all going to need to be redacted before it can be sent

19   to the United States.  It's a massive undertaking, and in this

20   particular case, because it's an international undertaking

21   with this overlayer of all these international statutes that

22   will have to be dealt with, it makes it even more complicated

23   than it would be in an ordinary case.

24           **THE COURT:**  All right.  All right.  Anything else?  I

25   don't have any other questions.

TRANSCRIBED FROM DIGITAL RECORDING

1        **MR. LOIGMAN:**  I do want to mention to Your Honor one

2    other question because I think -- one other point because I

3    think it's notable, which is that we asked to stay discovery

4    pending a decision by the District Court on the motion for --

5    for arbitration.  They -- one of the things that we raised in

6    that motion was that this might not even be an issue for the

7    District Court to decide.  This might be an issue for the

8    arbitrators to decide, whether it should go to arbitration or

9    go to -- go to court.  And the case that they cite -- that the

10   plaintiffs cite is a case called *Coinbase versus* -- actually,

11   *Suski versus Coinbase*.  The *Suski versus Coinbase* case is a

12   Ninth Circuit case where they talked about there was one

13   agreement and then there was a later agreement and which

14   agreement should govern as to the dispute.  The dispute

15   actually focused solely on the second agreement.  But the

16   Court decided in that instance it could decide whether the

17   arbitration provision applied.

18        But, in fact, the Supreme Court has granted

19   certiorari on this specific issue in that case of who should

20   have the right to review in the first instance, and it is

21   hearing argument coincidently on that tomorrow morning at

22   10:00 a.m.

23        **THE COURT:**  I can tell you which way my colleagues

24   and I are probably hoping that goes.

25        **MR. LOIGMAN:**  Well, it could well go the same way as

TRANSCRIBED FROM DIGITAL RECORDING

1    the last *Coinbase* case in the prior --

2         **THE COURT:**  And I say that, for the record, just

3    simply out of our selfish -- you know, if somebody else wants

4    to decide that, that's one less thing we have to decide.  If

5    that's the law, we'll be happy to follow it.

6         **MR. LOIGMAN:**  Right.  And obviously that is certainly

7    an outcome of the -- of the argument.

8         **THE COURT:**  Right.  All right.

9         **MR. LOIGMAN:**  A possible outcome.

10        **THE COURT:**  All right.

11        **MR. LOIGMAN:**   Thank you, Your Honor.

12        **THE COURT:**  So, Mr. Tennert, one of the issues I have

13   when I looked at this was, if I'm reading this right, all I'm

14   seeing in terms of the prejudice that you're claiming is the

15   fact that you're not going to have a -- a -- a quick -- you

16   know, under -- under Rule 1, a -- a speedy resolution of this

17   matter.

18        What -- what sort of prejudice would EBET incur if --

19   if I were to stay discovery while this issue is being decided?

20        **MR. TENNERT:**  Yes.  Well, thank you, Your Honor.

21   And -- and we recognize your -- your concern there.

22        Your Honor, as you may know from the -- the complaint

23   that has been filed -- and we have filed an amended complaint,

24   that's correct, and I know that is certainly not before the

25   Court today.  But I -- just for the -- for the Court, the

TRANSCRIBED FROM DIGITAL RECORDING

1    amended complaint includes substantially more allegations that

2    relate to the alleged fraud, misrepresentations.  It does add

3    additional parties located in Nevada with business in Nevada

4    as well.

5           But getting back to the -- the prejudice that we

6    would face if we're not able to proceed with discovery, as

7    Your Honor knows from your review of our complaint and the

8    briefs here, this -- this dispute involves a transaction that

9    happened over two years ago and information that would predate

10   that, including information, you know, that's ongoing today.

11          Now, to kind of touch on the -- the expense part of

12   that, most, if not all, of the information in this case will

13   be electronic.  And whether stored in Nevada or outside of

14   Nevada, the expense and burden of discovery is the same,

15   Your Honor.

16          We have -- we have pursued discovery since this case

17   has started.  We participated in a 26(f) conference.  We have

18   made initial disclosures.  We have served written discovery,

19   and we've started to serve third-party discovery.  And that,

20   Your Honor, is in -- in compliance with our obligations of --

21   by this Court to move discovery forward in an expeditious

22   manner.  And we're doing that, Your Honor, because, you know,

23   documents are lost, witness memories fade, and we're seeking

24   to pursue this discovery, you know, as -- as expeditiously as

25   possible in compliance with Rule 1.

TRANSCRIBED FROM DIGITAL RECORDING

1          **THE COURT:**  If everything's stored electronically,

2     how are things going to get lost?

3          **MR. TENNERT:**  Well, Your Honor, not -- not only the

4     electronic documents -- or electronic information is what

5     we're seeking but also witnesses.  This case may involve

6     numerous witnesses, both, you know, in the United States and

7     outside of the United States who may have information.

8     Also --

9          **THE COURT:**  What -- what sort of -- give me an idea

10    because, you know, that is -- that could be an issue.  You

11    know, memories fade, time goes by.  But -- so what would they

12    be testifying to?  What sort of information might they --

13    might fade away or they might forget if -- if time lapses

14    and -- and I stay discovery?

15         **MR. TENNERT:**  Yeah.  And, Your Honor, I'll give you a

16    few examples.  So one example in one of the allegations of

17    misrepresentation and fraud both prior to the transaction and

18    after would be the representations concerning affiliate

19    accounts and marketing expenses and operating expenses.

20         Now, after the transaction had closed, it took some

21    time for EBET to discover this what we'll call affiliate

22    misrepresentations.  And what -- what that is, is the

23    affiliates are entities that provide marketing services for

24    the online gaming applications, and then they're paid a

25    certain amount based on number of players who register and

TRANSCRIBED FROM DIGITAL RECORDING

1    deposit a certain amount of money.

2          Now, it wasn't until after the deal had closed that

3    EBET had discovered that, prior to the -- the deal closing,

4    Aspire, and through its agents, had been manipulating that

5    data and underpaying affiliates fraud -- in a fraudulent way

6    such that the operating expenses were substantially lower by

7    hundreds of thousands per month potentially based on some of

8    the information that we have.  And that really came to light

9    following, you know, EBET actually getting that information

10   and getting into a affiliate database that was able to, you

11   know, identify some of these issues.  But not only that, also

12   from former employees of Aspire who had confirmed the -- the

13   misrepresentations and the fraudulent conduct of Aspire.

14         So, you know, with --

15   **THE COURT:**  So how did they confirm it?  What do you

16   have that -- that is confirming?  Do you -- did they have

17   writings?  Do they have documents?  Do they have e-mails?

18   **MR. TENNERT:**  Yeah, both -- both through e-mails and

19   documents and testimony -- and potential testimony of

20   witnesses, of -- of former Aspire employees.

21   **THE COURT:**  It sounds, to me, to the extent you might

22   have an issue with recollections fading, that you have the

23   sort of things that the rules are designed to refresh

24   recollections with.

25   **MR. TENNERT:**  Well, yeah, you're correct, Your Honor.

TRANSCRIBED FROM DIGITAL RECORDING

1    But it's an issue of locating these witnesses and also

2    developing that factual record, too.  So we're seeking to --

3    you know, we -- we have -- we've made allegations that relate

4    to fraudulent conduct, but, you know, a vast majority of

5    these -- these documents that may exist out there we just

6    don't know.  You know, we would -- we would -- you know, I

7    don't believe this to be true and it may be true, but, you

8    know, whether or not there are actual documents that confirm

9    this fraud, we may need to speak to all the former employees

10   and witnesses of -- of Aspire who can testify to these issues.

11         **THE COURT:**  So let me ask you this.  If -- if I stay

12   discovery, my impression of that would be that you can't

13   propound discovery on -- on the defense; no interrogatories,

14   no requests for production of documents, no setting the

15   depositions.  But that doesn't stop you or your clients from

16   contacting these people and reaching out and getting

17   statements from them, does it?  I mean, I -- you still can

18   investigate your case and do things that you can do.  You just

19   can't force the other side to participate in the discovery

20   process.  Am I wrong there?

21         **MR. TENNERT:**  Well, you're not incorrect, Your Honor,

22   [indiscernible] respect that the parties can certainly take

23   informal discovery and seek to interview witnesses.  But in --

24   in situations such as this where we are pursuing serious

25   allegations of fraud, you know, as it relates to a highly

TRANSCRIBED FROM DIGITAL RECORDING

1    regulated industry, both, you know, as we know in Nevada and

2    worldwide.  And so, you know, having the ability to, you know,

3    use process and use formal process to compel not only

4    discovery from our -- our opponent who, you know, again, we've

5    alleged serious allegations to uncover this fraudulent --

6    further fraudulent -- evidence of fraudulent conduct, but also

7    as to third parties, which may include, you know, current or

8    former employees or agents of Aspire.  In the amended

9    complaint that we've alleged claims against Aspire's parent

10   company, NeoGames.  We've also alleged allegations of

11   conspiracy as it relates to this deal and the fraudulent

12   conduct that has occurred and alleged in our complaint.

13        **THE COURT:**  All right.  All right.  Anything else,

14   Mr. Tennert?  I don't have any other questions.

15        **MR. TENNERT:**  No, Your Honor.  I just wanted to go

16   back.  And we do recognize and respect that this Court has

17   adopted the good-cause standard that looks at not only, you

18   know, whether the -- you know, a dispositive motion requires

19   additional discovery and then also whether good cause exists.

20   And as you've mentioned before that, you know, the preliminary

21   peek can be part of that good-cause analysis.

22        And so for Your Honor's -- you know, for -- for your

23   sake, in our opposition we did argue the "preliminary peek"

24   standard based on that, and in large part that Aspire's motion

25   really does focus in on the merits of the -- the argument,

TRANSCRIBED FROM DIGITAL RECORDING

1    which is the arbitration provision in the Share Purchase

2    Agreement.

3           We are contesting the validity of an agreement to

4    arbitrate and so we're not arguing the scope of a arbitration

5    agreement, but we are putting forth a promissory note that

6    is -- was signed by Aspire that does place jurisdiction

7    squarely in Nevada.  And, you know, to the extent it goes to

8    the merits as part of that good-cause argument, we submit

9    that, you know, good cause exists to -- good cause does not

10   exist to stay discovery.

11          **THE COURT:**  All right.  Okay.  And I appreciate that,

12   and I -- you know, it's not like I've -- and I don't know what

13   Judge Weksler's done, but it's not like this Court has

14   completely abandoned the preliminary peek in terms of looking

15   at it.  I just found it onerous and unwieldy that -- to do my

16   own analysis, so to speak, of -- of the underlying motion and

17   make that the central focus of the determination.  And so it's

18   not that I don't look at it or consider it.  Because in this

19   case I think it's -- it's an important issue because it -- it

20   is a jurisdictional issue.  And that's different than

21   something along the lines of, well, they can't state a claim

22   or they're not going to be able to prove this so throw it out

23   now.

24          And so it's not like I completely ignore the

25   underlying dispositive motion because I think that is just

TRANSCRIBED FROM DIGITAL RECORDING

1    part and parcel of -- of good cause.  And so to the extent

2    that may help the parties in the future know what the Court is

3    thinking when I -- when I look at this issue and analyze it,

4    that -- that is part of what I'm thinking.

5           But I appreciate that, Mr. Tennert.  And, again, I

6    don't mean to insinuate that you shouldn't have spent any time

7    talking about that.  I think it was important.  I -- I just

8    think, you know, again, in this case there was some other

9    considerations.

10          And I think, again, at the end of the day then -- and

11   you can go ahead and be seated, Mr. Tennert.  I -- it's -- you

12   know, I've got to balance, you know, the right of the

13   plaintiff to -- to move the case along, to pursue their case,

14   to -- to pursue discovery as is their right in these cases,

15   and then I have to balance it in a case like this whereas the

16   defense points out this, you know, is a jurisdictional issue

17   that can be decided without any discovery.  And I don't think

18   anybody's contesting that.  And so I -- I think in large part

19   some of this balances the prejudice to the various parties,

20   you know, taking into consideration Rule 1, and a lot of it is

21   the just, inexpensive determination of a case.

22          And I think Mr. Loigman's arguments about some of the

23   nuances and complexities of this specific case ring true to

24   the Court in terms of -- or resonate with the Court in terms

25   of the prejudice that -- that they would incur if discovery

1   continues.  Just the amount of information, the complexity

2   with discovery being in Europe and here, an example already

3   of -- of subpoenas going out that are going to clearly -- at

4   least in my estimation -- result in more discovery litigation

5   down the line, which isn't going to be inexpensive.  And so I

6   balance that with what I'm hearing from EBET, Inc., which is

7   the time and the witnesses' memories fade and, you know, the

8   potential of lost documents, but I think in this day and age

9   that's less and less likely with everything being stored

10  electronically, especially with parties to the case like this

11  that are used to doing that, that are basically online,

12  electronic-type companies that would be, I think, completely

13  in their normal practice to -- to store information

14  electronically, which decreases, at least in my estimation,

15  the chance that things will be lost or destroyed or otherwise

16  create prejudice for EBET because of a delay in the discovery.

17          In terms of, again, the witnesses' memories fading,

18  I -- I understand that as well.  I spent a career before I was

19  appointed to the bench trying to delay cases for that very

20  hope and not with very much success.  So I understand they

21  fade.  But I think in this case, again, you've got e-mails and

22  it's -- it's a different sort of situation where, to the

23  extent they may fade about some things that happened a year or

24  two ago, it's very likely that there's going to be e-mails and

25  other information that will be able to jog memories and -- and

TRANSCRIBED FROM DIGITAL RECORDING

1    help them testify.  And so I -- I think the prejudice as it

2    relates to those issues is minimal, at least when compared to

3    the prejudice Aspire and the defendants would incur if I were

4    to deny their motion.

5         And so I think, on balance, I'm going -- I think

6    facts require me to grant their motion to stay the discovery

7    pending the disposition of their motion to dismiss and compel

8    arbitration.

9         And so I will grant Number 33, the defendant's motion

10   to stay.  Because I'm granting that, I will deny the Discovery

11   Plan and Scheduling Order that was proposed at Number 40.

12   I'll note that that outlined the parties' position, including

13   incorporating a motion to stay discovery because, of course,

14   Aspire didn't want a Discovery Plan and Scheduling Order; they

15   wanted a stay.  I will deny that without prejudice, and I will

16   order that, in the event the motion to dismiss or compel

17   arbitration is denied and this matter proceeds, that the

18   parties have 14 days from the date of that order to file a new

19   Discovery Plan and Scheduling Order.  And I would hope that

20   the parties could agree on that, at least on that aspect of

21   it, so that in the event that's denied by Judge Navarro, the

22   discovery will proceed as quickly thereafter as possible.

23        That disposes of 33 and 40.

24        Mr. Loigman, anything else from the defendants on

25   this matter since it was your motion?

TRANSCRIBED FROM DIGITAL RECORDING

1          **MR. LOIGMAN:**  Nothing further, Your Honor.

2          **THE COURT:**  All right.  Mr. Tennert, anything else

3     from --

4          **MR. TENNERT:**  Nothing further, Your Honor.

5          **THE COURT:**  -- plaintiffs?  All right.

6          Thank you, both, very much.  Appreciate your

7     preparation and attendance today.  That concludes this matter.

8     Court is in recess.

9          *(Proceedings adjourned at 2:02 p.m.)*

10                              * * *

11        I, AMBER M. McCLANE, court-appointed transcriber, certify

12    that the foregoing is a correct transcript transcribed from

13    the official electronic sound recording of the proceedings in

14    the above-entitled matter.

15

16    /s/ *Amber M. McClane*              2/27/2024

17        AMBER McCLANE, RPR, CRR, CCR #914       Date

18

19

20

21

22

23

24

25

UNITED STATES DISTRICT COURT
Amber McClane, RPR, CRR, CCR #914